**HOLLAND INDUSTRIES, INC.,**
Plaintiff,

v.

**ADAMAR OF NEW JERSEY, INC., Defendant.**

No. 82 Civ. 2261(MEL).

United States District Court,
S.D. New York.

Nov. 15, 1982.

Wagner, McNiff & DiMaio, New York City, for plaintiff; Arthur Wagner, New York City, of counsel.

Skadden, Arps, Slate, Meagher & Flom, New York City, Snell & Wilmer, Phoenix, Ariz., for defendant; Barry Garfinkel, New York City, of counsel.

LASKER, District Judge.

Holland Industries, Inc. ("Holland") filed this diversity action for breach of contract against Adamar of New Jersey, Inc. ("Adamar") in March 1982. Adamar moves for summary judgment on the ground that Holland's failure to satisfy a condition precedent entitles Adamar to judgment as a matter of law.

The instrument upon which Holland sues is a letter dated June 24, 1980 ("Letter") from Adamar's president to Holland's chairman, which confirmed a "memorandum of understanding" between the parties. Under the terms of the Letter, the parties agreed that Holland would provide bus transportation services to Adamar, which operates and does business as the Tropicana Hotel/Casino in Atlantic City, New Jersey. The Letter further states, in paragraph 8:

"HOLLAND understands that any service agreement with ADAMAR must be approved by the New Jersey Casino Control Commission and further, that Holland must apply for a New Jersey Casino Service Industry License. In the event of a denial of the above application, the agreement is terminated immediately at no cost or liability to ADAMAR."

The bus transportation services contemplated by the Letter were never put into operation. Adamar's vice president for marketing, in a letter to Holland's chairman dated January 16, 1981, informed Holland that Adamar had reevaluated the advisability of entering into the agreement set out in the Letter, and took the position that the Letter had been only a letter of intent establishing no obligations. Adamar adheres to that position in this action, but argues that Holland's failure to obtain a casino service industry license entitles Adamar to summary judgment even if the Letter is assumed to comprise an enforceable contract.

It is undisputed that Holland has not obtained a casino service industry license. Holland nevertheless opposes the summary judgment motion both on the ground that genuine issues of material fact exist, that Holland is exempt from license requirements under New Jersey law and that the Letter as properly interpreted does not require Holland to obtain a license if one is legally unnecessary.

▌ Holland has misconceived the nature of the showing necessary to demonstrate that a matter is not ripe for summary judgment. Holland's "Statement of Material Facts" presents only a list of legal questions relating to contract and statutory interpretation—*e.g.*, "whether [an] exemption was not automatic or at the very least ministerial in light of Plaintiff's status as an ICC carrier" (Plaintiff's 3(g) Statement, ¶ 4). These issues of interpretation are indeed in dispute, but since the dispute is legal and not factual, it presents nothing for trial and is appropriately resolved on a motion for summary judgment.[1] *See* F.R. Civ.Pr. 56.

▌ If Holland has failed to comply with a condition precedent to the alleged contract, recovery for breach of contract is barred. *Coletti v. Knox Hat Co.*, 252 N.Y. 468, 169 N.E. 648 (1930); *Duff v. Trenton Beverage Company*, 4 N.J. 595, 73 A.2d 578 (1950); *See Byrnes v. Faulkner, Dawkins & Sullivan*, 413 F.Supp. 453 (S.D.N.Y.1976) *aff'd*, 550 F.2d 1303 (2d Cir.1977).[2] Holland contends, however, that it has not failed to comply with a condition precedent. Its argument runs as follows: paragraph 8 of the Letter relieves Adamar of liability only if Holland is denied a casino service industry license; because it has not been denied a license, Holland is not in default on its obligation to obtain a license. The argument is without merit. According to Holland's theory, Holland could forever avoid the contractual consequences of being denied a license simply by refraining from applying for one. We agree with Adamar that under the plain meaning of ¶ 8 of the Letter, Holland was obligated to obtain a casino service industry license as a condition precedent to Adamar's contractual liability.

As a second line of defense, Holland contends that ICC-authorized carriers such as Holland are exempt from licensing requirements under the New Jersey Administrative Code (N.J.A.C.). In effect, Holland argues that the provisions of ¶ 8 of the Letter were intended to apply only if a license was in fact necessary under New Jersey law; the contract, Holland contends, cannot reasonably be interpreted to require a license for its own sake if such a license would have been legally superfluous. Even assuming that Holland's interpretation of ¶ 8 is correct, however, the argument fails because Holland's contention that it is ex-

1. If Holland's 3(g) Statement did raise factual issues, there is serious question whether the affidavits submitted with it would be procedurally sufficient to merit consideration on this motion. The affidavit of Jay Margolies, Holland's president, and the affidavit of Arthur Wagner, Holland's attorney in this action, are based on hearsay reports of advice they received from the New Jersey Casino Control Commission. These submissions do not meet the requirements of F.R.Civ.Pr. 56(e), which requires that affidavits offered in opposition to a summary judgment motion be made on personal knowledge. *See Establissement Tomis v. Shearson Hayden Stone, Inc.*, 459 F.Supp. 1355, 1363 (S.D.N.Y.1978).

2. The parties have not addressed the issue of whether New York or New Jersey law is applicable. Because the law of both states is in agreement on the issues of contract law applicable to this motion, we need not decide the question.

empt from license requirements under New Jersey law is incorrect.

■ New Jersey Stat.Ann. 5:12–92 (1982 Supp.) requires the licensing of casino service industries. Under N.J.S.A. 5:12–92(c), the New Jersey Casino Control Commission ("Commission") is authorized to exempt a "field of commerce" from licensing requirements if it is regulated by another public agency and the Commission determines that licensing is not necessary to protect the public interest or to accomplish the purposes of the Casino Control Act. Holland relies on the "travel industry exemption," described in a Commission staff memorandum dated July 7, 1978 ("Staff Memorandum") to establish that it is exempt from licensing requirements. However, two basic provisions must be satisfied by entities claiming the benefit of this exemption, only one of which even arguably applies to Holland.

The travel industry exemption covers travel enterprises which (1) "are engaged in routine transactions covered by a standard rate schedule submitted by a casino hotel and approved by the Commission" *and* (2) "are licensed or certified by [*inter alia*] the ... I[nterstate] C[ommerce] C[ommission]...." Staff Memorandum at 18. Holland has not argued or established that the services to be supplied to Adamar were covered by a standard rate schedule approved by the Commission. On the other hand, Adamar has submitted an affidavit by Adamar's assistant corporate counsel, Lee Gottlieb, which states that Adamar "has never done business with members of the travel industry pursuant to an arrange-

ment on the same terms as set forth in [the Letter] nor has Adamar established a rate schedule and filed it with the Commission with rates such as those described in [the Letter]." Gottlieb Affidavit ¶ 9. Because the first condition of the travel industry exemption has not been fulfilled, Holland cannot claim the benefit of this exemption regardless of whether Holland is licensed by the ICC.[3]

■ Holland nevertheless asks "whether it was not incumbent upon Defendant to submit the June 24, 1980 agreement [the Letter] to the ... Commission so that the Commission could determine the necessity of requiring the filing of either a casino service industry license application or a request for an exemption." (Plaintiff's 3(g) Statement, ¶ 3). As Adamar points out, nothing in the Letter upon which Holland relies in this action implies such an obligation on Adamar's part. The Letter is clear, on the other hand, as to Holland's obligation to obtain a casino service industry license. If Holland decided instead to rely on an exemption from the licensing requirements, it was at the very least incumbent upon it to take all necessary steps to assure that it met all the requirements for the exemption. In its letter to Adamar of January 13, 1981 (Adamar's Exhibit B), Holland made no request that Adamar file the Letter with the Commission, but simply took the position that no license application by Holland was necessary. Thus, Holland cannot rely on Adamar's failure to submit the Letter to the Commission as an excuse for Holland's failure to obtain a casino ser-

---

**3.** In 1977 Holland was found to be a carrier within the meaning of 49 U.S.C.A. § 11348, which deals with the ICC's authority over a noncarrier that acquires control of a carrier, *see* Holland's Exhibit A. However, Holland has not obtained authorization to operate routes between New York and New Jersey. Shortway Lines, Inc., Holland's wholly-owned subsidiary, obtained authorization for such routes in May and April of 1982. Even if Shortway's authorization could be "borrowed" by Holland for the purposes of the travel industry exemption, no authority on Shortway's part existed until long after Adamar's repudiation of the agree-

ment which occurred in January, 1981. Furthermore, although Holland states that it made arrangements with an affiliated company, 76 Adventures of New Jersey, Inc., to operate under that company's ICC certificate pending Shortway's grant of operating authority, nothing in the Staff Memorandum or in the New Jersey casino industry regulations, N.J.A.C. 19:43–1.1. *et seq.*, indicates that such an arrangement would be recognized as complying with the travel industry exemption requirements. Thus, it is doubtful that Holland qualifies as an ICC-authorized carrier within the meaning of the travel industry exemption.

vice industry license or to qualify under the travel industry exemption.[4]

Holland raises the additional question whether Adamar is "precluded by its own bad faith in its dealings with Plaintiff" from relying on Holland's failure to obtain a casino service industry license as a defense to Holland's contract action. The only example of "bad faith" cited by Holland is Adamar's failure, in its letter terminating the parties' agreement, to address Holland's position that Holland was exempt from license requirements. Holland implies by this argument that Adamar terminated the agreement for reasons other than Holland's failure to obtain a casino service industry license. Even if correct, the contention is irrelevant to the questions presented by this motion. Holland cannot recover for a breach of contract as to which Holland has failed to satisfy a material condition precedent.

In light of the disposition reached here, we need not address Adamar's argument that, because Holland is unlicensed, the agreement is unenforceable for illegality.

The motion for summary judgment is granted.

It is so ordered.

---

4. Under N.J.A.C. 19:41–11.3(g) a casino service industry may do business with a casino for a reasonable time without a license, if both a vendor registration form and a casino service industry license application have been filed. Although Holland has filed a vendor registration form and has been given a vendor number, it has never filed a license application and thus cannot rely on the provisions of N.J.A.C. 19:41–11.3(g).