874 F.2d 1008
 4 Indiv.Empl.Rts.Cas. 781, 14 O.S.H. Cas.(BNA) 1005,
1989 O.S.H.D. (CCH) P 28,574
The LEWIS GROCER COMPANY, Petitioner,
v.
Levi HOLLOWAY, Robert Murray, and U.S. Department of Labor,
Respondents.
 No. 88-4173.
 United States Court of Appeals,
Fifth Circuit.
 June 8, 1989.
 
 Charles A. Adams, Jr., Bart N. Sisk, and Henry T. Arrington, New Orleans, La., for petitioner.
 Barbara McConnell, Ann Rosenthal, and Elizabeth L. Dole, Dept. of Labor, Washington, D.C., for respondents.
 Petition for Review of an Order of the United States Department of Labor.
 Before THORNBERRY, GEE, and POLITZ, Circuit Judges.
 POLITZ, Circuit Judge:
 
 
 1
 Lewis Grocer Company petitions for review of the Secretary of Labor's ruling that it discharged an employee in violation of section 405(b) of the Surface Transportation Assistance Act of 1982, 49 U.S.C.App. Sec. 2305(b). Concluding that the Secretary's finding of unlawful discharge is supported by substantial evidence, but that her remedial order is in error, we grant the petition for review in part, affirming the Secretary's decision in all respects other than her order of reinstatement.
 
 Background
 
 2
 On December 7, 1986 Levi Holloway and Robert Murray, commercial drivers for Lewis Grocer, were dispatched from the company's terminal in Indianola, Mississippi to Tampa, Florida. During the trip the drivers encountered problems with the front end of their vehicle, Lewis Grocer's tractor number 300. As required by Lewis Grocer, upon return to the terminal on the morning of December 10, 1986 Holloway and Murray completed a vehicle inspection report noting the front-end problem. The report is in three parts. The pink copy is left in the vehicle. The white copy, which is the original, and the yellow copy go to the dispatch office. The mechanic signs the white and pink copies after indicating repairs.
 
 
 3
 During the morning of December 10, Buddy Peoples, a mechanic employed by Lewis Grocer, was given the drivers' report on tractor 300 and he made the repairs indicated. Peoples completed and signed the white copy of the report and a vehicle inspection work order that provided a more detailed summary of the work performed, but he overlooked signing the pink copy of the report that remains in the vehicle for review by the drivers. Steven Miller, the fleet maintenance manager, inspected Peoples' repairs and returned tractor 300 to the "ready line."
 
 
 4
 Holloway and Murray were scheduled to drive tractor 300 to Fargo, North Dakota on the morning of December 11. They reported to the terminal late in the evening on December 10. When Holloway made a preliminary inspection of the vehicle and found a headlight out, he drove it into the shop where mechanic David Triplet replaced the headlight and adjusted the fog lights. When Triplet entered the tractor to check the lights he noticed that the pink copy of the vehicle inspection report had not been signed by a mechanic. He called this to the attention of Holloway and Murray. According to Holloway, Triplet then jacked up the tractor and, along with fellow-mechanic James Smith and their supervisor, Harvey Forrest, examined it. Holloway claims that the mechanics determined that the truck was unsafe to drive and that Forrest told him he would try to get him another vehicle.
 
 
 5
 Holloway went to inform Murray about the situation. Simultaneously, Forrest called Miller, who informed him that the tractor had been repaired and that Peoples, the attending mechanic, had signed the original copy of the inspection report. When Forrest could not find the original copy of the report in the dispatch office, however, Miller agreed to return to the shop, despite the lateness of the hour, to reinspect the vehicle. Holloway claims that at the conclusion of the call, Don Vandrell, director of transportation, ordered the drivers to drive the truck anyway. They refused. At this point, from the evidence presented it cannot be said that Lewis Grocer knew that the vehicle had been repaired and was in fact safe.
 
 
 6
 While these events were in motion Holloway and Vandrell engaged in an altercation of ill-defined proportions. Holloway claims that he was waiting in a break room when Vandrell angrily told him that he was in the wrong area and ordered him to move to another location. When he left the break room Holloway noticed that Miller had returned to the terminal and was inspecting tractor 300. Murray was watching the reinspection. Holloway claims that he started toward the truck to watch, but Vandrell ordered him away and again told him to move to the other break room. When Holloway tried to get his luggage out of the cab of the tractor Vandrell called security and had him removed from the premises.
 
 
 7
 It was only after Holloway was escorted from the premises that Miller completed the reinspection of tractor 300 and confirmed his earlier advice that the truck had been repaired. Murray was given an opportunity to road-test the vehicle, but he refused. No effort was made to contact Holloway to advise him of these developments. Miller and Vandrell then took the tractor for a test-ride and satisfied themselves that it was operationally safe. A substitute driver made the run to Fargo without incident.
 
 
 8
 On December 19, 1986 Holloway and Murray were discharged for refusing to make a scheduled run. Holloway also was cited for using loud and abusive language during the dispute with Vandrell. In May of 1987 Lewis Grocer offered to reinstate Holloway and Murray to their former positions with no loss of seniority and at their former pay and benefit levels, but they refused to return to work. Both men filed complaints against Lewis Grocer under section 405(b) of the Surface Transportation Assistance Act of 1982 (STAA), 49 U.S.C.App. Sec. 2305(b), which prohibits the discharge of, or other discrimination against, employees who have engaged in certain protected activities. A hearing was held before an administrative law judge, at which Holloway and Murray appeared pro se. Miller was the only member of Lewis Grocer's maintenance department who testified on behalf of the company.
 
 
 9
 The ALJ concluded that Lewis Grocer's conduct was not discriminatory and recommended dismissal of both complaints. The Secretary accepted the recommendation with respect to Murray's complaint, but rejected it as to Holloway. The Secretary ordered Lewis Grocer to reinstate Holloway with limited back-pay; the company petitions this court for review.Analysis
 
 
 10
 Concerned about the mounting number of fatalities and injuries and increasing property damage caused by commercial motor vehicle accidents, and the widespread violation of safety regulations, Congress enacted the STAA to promote safe interstate commerce of commercial motor vehicles. 128 Cong.Rec.S. 15609, S. 15610 (December 19, 1982) (remarks of Sen. Danforth and summary of proposed statute). In enacting this legislation, Congress recognized that employees in the trucking industry are frequently the best source of information concerning unsafe commercial motor vehicles, but that they may be reluctant to provide or to act on that information for fear of retaliation by their employers. See, e.g., 128 Cong.Rec.S. 15769 (December 20, 1982) (remarks of Sen. Percy); 128 Cong.Rec.S. 15610 (December 19, 1982) (remarks of Sen. Danforth); see also Brock v. Roadway Express, Inc., 481 U.S. 252, 107 S.Ct. 1740, 95 L.Ed.2d 239 (1987). Accordingly, section 405 of the STAA was enacted to protect employee "whistle-blowers" from unlawful discrimination or retaliation. At issue in this appeal is subsection (b) of section 405, which provides in relevant part:
 
 
 11
 No person shall discharge, discipline, or in any manner discriminate against an employee with respect to the employee's compensation, terms, conditions, or privileges of employment for refusing to operate a vehicle ... because of the employee's reasonable apprehension of serious injury to himself or the public due to the unsafe condition of such equipment. The unsafe conditions causing the employee's apprehension of injury must be of such nature that a reasonable person, under the circumstances then confronting the employee, would conclude that there is a bona fide danger of an accident, injury, or serious impairment of health, resulting from the unsafe condition. In order to qualify for protection under this subsection, the employee must have sought from his employer, and have been unable to obtain, correction of the unsafe condition.
 
 
 12
 The Secretary's decision in favor of Holloway was premised on its findings that Holloway: (1) had reasonable apprehension of serious injury due to the unsafe condition of tractor 300 because the pink copy of the inspection report was not signed by a mechanic; (2) sought correction of the unsafe condition; (3) was unable to obtain correction of the unsafe condition because he was unjustly removed from the premises by Vandrell, thereby interfering with his being advised that the vehicle was in safe operating condition; and (4) was discharged for refusing to operate tractor 300. Our review of these findings is limited to the determination whether they are supported by substantial evidence in the record. 49 U.S.C.App. Sec. 2305(d)(1); 5 U.S.C. Sec. 706(2)(E). Substantial evidence is "something less than the preponderance of the evidence ... but is more than a scintilla." Dunham v. Brock, 794 F.2d 1037, 1040 (5th Cir.1986) (citations omitted). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). It is not that quantity and quality of evidence which might persuade us were we triers-of-fact in the first instance.
 
 
 13
 On appeal, Lewis Grocer concedes that it was reasonable for Holloway to believe that tractor 300 was unsafe and it does not dispute that Holloway had reasonable apprehension of serious injury. It also is undeniable that Holloway sought repair of the tractor, and, as of the time Holloway was removed from the premises, that Lewis Grocer did not definitively know the condition of the tractor because of the unsigned pink copy and the missing white copy of the vehicle inspection report. Likewise, overwhelming evidence supports the Secretary's finding that Lewis Grocer discharged[1] Holloway for refusing to operate tractor 300. Thus, the gravamen of this appeal is whether under the peculiar circumstances of this case it can be said that Holloway was unable to obtain correction of the unsafe condition.
 
 
 14
 Neither party disputes that Holloway would have been able to obtain correction of the unsafe condition if he had not been removed from the premises by Vandrell. In due course, the dispute between the Lewis Grocer mechanics was resolved. Nevertheless, the Secretary concluded that because Holloway "did not leave the premises voluntarily and took no action which kept him from being advised that the vehicle was in a safe condition," it is deemed that Holloway was unable to obtain repair of the vehicle. Lewis Grocer, on the other hand, avers that Holloway was escorted from the terminal solely because of his altercation with Vandrell concerning the break area. Lewis Grocer maintains that but for that argument, unrelated to Holloway's refusal to drive the tractor, Holloway would have remained in the shop area and would have been able to secure the repair envisioned by the statute.
 
 
 15
 The Secretary's finding that Holloway took no action that kept him from being advised that tractor 300 had been repaired is adequately supported by the record. Indeed, as the Secretary argues on appeal, there is a substantial basis in the record for concluding that Vandrell had Holloway removed from the premises because he had raised the issue of the safety of tractor 300. Vandrell's anger at Holloway for being in the wrong break room seems disproportionate to the suggested infraction. Break areas can hardly be considered that inviolate late at night. Moreover, Lewis Grocer produced no evidence that company rules required drivers to use any particular break room. Lewis Grocer also failed to explain why Vandrell would not permit Holloway to watch the reinspection of the tractor but would allow Murray to do so. We conclude that the record contains substantial evidence supporting the Secretary's finding that Holloway was unable to obtain repair of tractor 300, as well as her ultimate conclusion that Holloway was discharged in violation of section 405(b) of the STAA.
 
 
 16
 As a remedy for Lewis Grocer's violation of the STAA, the Secretary ordered the reinstatement of Holloway and back-pay, less interim earnings from the date of his discharge to the date in May of 1987 on which the company offered to reinstate him to his former position with no loss of seniority and at his former pay and benefits levels. Lewis Grocer challenges the order of reinstatement, claiming that it is precluded by Holloway's refusal to accept its unconditional offer of reinstatement. On appeal the Secretary maintains that reinstatement is appropriate because the prior offer of reinstatement was conditioned on a waiver by Holloway of his rights under the STAA.
 
 
 17
 In the context of a Title VII claim, which we believe sufficiently analogous to provide guidance in the case at bar, an unconditional offer of reinstatement ordinarily tolls an employer's back-pay liability. Ford Motor Co. v. EEOC, 458 U.S. 219, 102 S.Ct. 3057, 73 L.Ed.2d 721 (1983); Figgs v. Quick Fill Corp., 766 F.2d 901 (5th Cir.1985). We agree with our colleagues in the Tenth Circuit that it also precludes a subsequent order of reinstatement. Giandonato v. Sybron Corp., 804 F.2d 120 (10th Cir.1986). Notwithstanding the Secretary's argument on appeal, necessarily implicit in her decision to toll Lewis Grocer's back-pay liability was a finding that the company's offer to reinstate Holloway was unconditional. That finding is supported by substantial evidence. Lewis Grocer's refusal to resolve the issue of Holloway's entitlement to back-pay and other damages as part of its offer of reinstatement did not render the offer conditional. See Ford Motor Co., 458 U.S. at 233 n. 19, 102 S.Ct. at 3066 n. 19. There is simply no indication in the record that the offer was conditioned on surrender of Holloway's right to pursue relief under the STAA. Because the prior offer of reinstatement was unconditional, the Secretary erred in ordering Lewis Grocer to reinstate Holloway.
 
 
 18
 The petition for review is GRANTED in part. The decision of the Secretary is AFFIRMED in all respects other than as relates to the order of reinstatement, which is REVERSED.
 
 
 19
 GEE, Circuit Judge, concurring in part and dissenting in part:
 
 
 20
 I concur in the great part of the Court's well-written opinion, but find myself unable to bring myself to agree on the point of back-pay for Mr. Holloway. In my view, an at-will employee who defies his supervisor in reliance on a protective statute must bring himself within the terms of the statute or take the consequences.
 
 
 21
 Mr. Holloway "sought from his employer ... correction of the unsafe condition." As the majority opinion notes, he in fact obtained it; and at the time he refused to drive the tractor, it had been repaired and was in fact safe to drive. Thus, not having "been unable to obtain, correction of the unsafe condition," Holloway was outside the statute's mantle and acting at his peril.
 
 
 22
 To support the majority opinion, the statute would have to read, "and have been unable to obtain verification satisfactory to him of the correction of the unsafe condition." It does not; I therefore respectfully dissent on this small point alone.
 
 
 
 [1]
 Lewis Grocer argues that Holloway was "replaced," not discharged. That is a distinction without a difference