Lynn **MARTIN, Secretary of Labor, United States Department of Labor, Plaintiff,**

v.

**YELLOW FREIGHT SYSTEM, INC., Defendant.**

**No. 91 Civ. 8370 (GLG).**

United States District Court, S.D. New York.

May 18, 1992.

Office of Sol., U.S. Dept. of Labor, New York City (Stephen D. Dubnoff, Mark A. Holbert, of counsel), for plaintiff.

Gleason, Dunn, Walsh & O'Shea, Albany, N.Y. (Ronald G. Dunn, of counsel), for plaintiff-intervenor.

Galland, Kharasch, Morse & Garfinkle, P.C., Washington, D.C. (Anthony J. McMahon, of counsel), Cohen, Shapiro, Polisher, Shiekman and Cohen, Philadelphia, Pa. (Jeffrey I. Pasek, of counsel), for defendant.

## OPINION

GOETTEL, District Judge.

Robert Spinner was employed by Yellow Freight System, Inc. as a truck driver. The facts stated here have been drawn from the decision of Administrative Law Judge Rippey in *In the Matter of Robert C. Spinner v. Yellow Freight System, Inc.*, No. 90–STA–0017 (July 16, 1991). On October 3, 1989, at 5:00 a.m., he was assigned to drive a tractor-trailer from Cleveland, Ohio to Maybrook, New York. The trailer had been driven from Chicago to Cleveland by another driver. The paperwork given to Spinner by the dispatcher indicated he was to drive tractor number 4805. When Spinner went to the tractor, he observed that its number was 4804, not 4805. Under Federal Highway Administration regulations, a driver vehicle inspection report, known as an "OD–199", must be completed by the actual driver at the end of each work day and a copy must be carried on the tractor driven. The next driver is required to review the report before driving the tractor in order to assure himself that any defects noted by the previous drive had been corrected. The OD–199 found inside the tractor assigned to Spinner also carried the number 4805. Spinner could have verified that the OD–199 he found actually referred to tractor number 4804 but when he went to obtain that information,[1] his request was denied. He also requested that the tractor be inspected by a mechanic. That request, too, was denied. Spinner investigated further and the results could have persuaded him that the OD–199 in his truck, purportedly for number 4805, actually referred to the tractor he was assigned to drive although there was no hard evidence to support that view. Despite what the real facts may have been, Spinner still needed a correct OD–199 for number 4804. Spinner was asked to change the number on the OD–199 and proceed with his assignment. No one from Yellow Freight offered to make the change and take responsibility for that act. While under these circumstances obviously just a technical violation, requiring Spinner to drive number 4804 with an OD–199 for number 4805 was nevertheless a violation of the Federal Motor Carrier Safety Regulations. Spinner refused to drive the tractor and he was discharged.[2] The next day he filed a grievance pursuant to the collective bargaining agreement executed by Yellow Freight and

---

1. A safety inspection report, known as an OD–69, is completed by the fuel lane mechanics. If Spinner had been allowed to see the report pertaining to the tractor he had been assigned to drive, he would have determined that the tractor was number 4804 and that the OD–199 was misnumbered. He twice requested this form and was refused.

2. It is also worth noting that three times prior to the circumstances described here, Spinner had raised complaints concerning Yellow Freight's compliance with safety regulations promulgated pursuant to the STAA.

Local 707 of the International Brotherhood of Teamsters. On October 5, 1989, he filed a complaint with the Department of Labor with three separate allegations: that he was retaliated against for filing a safety complaint, that he was fired for refusing to drive a tractor when to do so would violate a federal regulation and for refusing to drive when he believed his safety would be jeopardized.

After an investigation, on December 15, 1989, the Regional Administrator for the Occupational Safety and Health Administration, acting under a delegation of authority from the Secretary of Labor, ordered Spinner's reinstatement pursuant to the § 2305(b) of the Surface Transportation Assistance Act, 49 App. U.S.C. § 2301 *et seq.* ("STAA"), finding that there was probable cause to believe that Spinner had been fired for refusing to drive a vehicle in violation of safety regulations.

Yellow Freight filed objections and supplemental objections to the Administrator's findings in January 1990. Among their contentions was the argument that the Administrator should have waited to issue the preliminary order until resolution of Spinner's union grievance. The matter was assigned to an administrative law judge for a hearing and determination which was scheduled for August 1990. In April 1990, the Department of Labor moved to postpone the ALJ's determination while the union grievance arbitration was pending. This motion was granted and on May 31, 1990, the arbitration decision was rendered in favor of Yellow Freight.

The Arbitrator found that Spinner was required to pre-trip, i.e. perform a quick safety inspection, his vehicle. The facts found in the arbitration were not inconsistent with those later found by the ALJ[3] but the arbitrator believed that Spinner did not have a good faith doubt as to the safety of his vehicle. The Arbitrator concluded that Spinner "was not asked or directed to violate Local, State or Federal law, pertaining to Highway safety." Defendant's Memorandum of Law in Opposition to Plaintiff's Motion for Temporary Restraining Order, Exh. C, at 7. Instead, he concluded that Spinner, by refusing to pre-trip the tractor and proceed with his assignment, had voluntarily chosen to resign, rather than be told what to do, or to follow orders. The Arbitration decision was upheld in the New York state courts on September 5, 1990 although it appears that the confirmation was not on the merits but occurred as a result of a default taken because Spinner did not enter an appearance.

On June 28, 1990, the Assistant Secretary of Labor for OSHA[4] issued a Notice of Determination to Defer to Outcome of Other Proceedings. Spinner did not withdraw his complaint within the Department of Labor and as he was not granted relief by the arbitration, he was permitted to become the prosecuting party.

Motions pertaining to the hearing were then filed. The scope of the hearing before the ALJ was limited to matters deciding issues under Section 405(b) (prohibition against discharge for discrimination for refusal to operate vehicle in violation of federal regulation) as the Secretary had not yet made preliminary findings on the merit of Spinner's claim pursuant to Section 405(a) that he was discharged in retaliation for filing complaints about Yellow Freight safety. In October 1990, Spinner was notified that the Regional Administrator found no merit to the Section 405(a) claim.

Spinner then appealed the Section 405(a) claim which was assigned to ALJ Rippey and the appeal was consolidated with the Section 405(b) claim. More motions followed. On July 16, 1991, ALJ Rippey issued a decision which found that Spinner

---

**3.** The Arbitrator found that Spinner had been assigned to drive tractor 4804 but was given a bill packet indicating he was to drive 4805. Spinner thus refused to drive because to do so would be illegal although he had ascertained that tractor 4804 was safe and that the bill packet was simply misnumbered as a result of a clerical error.

**4.** The Secretary of Labor has delegated authority and assigned responsibility for Section 405 complaints to the Assistant Secretary of Labor for Occupational Safety and Health. Order 9–83, 48 F.R. 35736 (August 5, 1983). References in this decision to the Secretary refer, on most occasions, to the Assistant Secretary.

was fired in violation of both Sections 405(a) and 405(b) of the STAA. Spinner's reinstatement was ordered. Further proceedings were held to determine the amount of backpay owed to Spinner and a decision on that matter was rendered on January 17, 1992. The Secretary of Labor has 120 days to make that decision final.[5]

On December 12, 1991, the Secretary of Labor filed a complaint in this court seeking to enforce Judge Rippey's July 16th order of reinstatement. Robert Spinner immediately moved to intervene and that motion was granted. A hearing on the propriety of a temporary restraining order and preliminary injunction was held and decision reserved. Yellow Freight, strongly objecting to Spinner's intervention, moved to reargue. In March 20, 1992, cross-motions for summary judgment were argued. This opinion addresses all of the outstanding motions in this very complex case which raises many issues of first impression.

## DISCUSSION

*The Motion to Reargue*

Yellow Freight System, Inc. moves to reargue our memorandum decision of January 13, 1992 which permitted Robert Spinner to intervene in this enforcement·action brought by the Secretary of Labor. This motion is denied.

■ First, Rule 3(j) of the Civil Rules for the United States District Courts for the Southern and Eastern District of New York requires a notice of motion for rear-

gument to be served within ten days after the docketing of the determination. The challenged memorandum decision was docketed on ·January 15, 1992. Yellow Freight served ·its memorandum of law on January 27, 1992 and its notice of motion on January 28, 1992. Thus, the motion is untimely.

Moreover, even had the motion been timely, defendant still has not shown that we overlooked controlling decisions concerning the right of parties to intervene in the enforcement of an interim order.[6]

■ The right of a party to intervene in an enforcement proceeding brought under the STAA, 49 App. U.S.C. § 2305(e), has never been addressed by any court as far as our research shows. In reaching our conclusion that permissive intervention by Spinner was appropriate in this case, we relied on *International Union,. United Auto., Aerospace and Agr. Implement Workers of America v. Scofield,* 382 U.S. 205, 86 S.Ct. 373, 15 L.Ed.2d 272 (1965), for the proposition that a successful party in administrative proceedings has the right to intervene in proceedings which review or enforce administrative orders even if the person has no private right of enforcement. We reasoned that because Spinner prevailed in the administrative proceedings conducted by the Department of Labor, he was entitled to intervene in these proceedings.

Yellow Freight contends here that *Scofield* is inapposite, arguing that the *Scofield* rule should be limited to proceedings enforcing final orders rather than interim

5. As of this date, no final order or decision has been issued.

6. Yellow Freight has cited some cases that it believes are unequivocal support of its position that Spinner is not permitted as a matter of law to intervene in this proceeding. *Amalgamated Clothing Workers v. Richman Brothers,* 348 U.S. 511, 75 S.Ct. 452, 99 L.Ed. 600 (1955), holds that a private litigant may not seek interim injunctive relief under the Taft–Hartley Act. There is no doubt that Spinner is unable to sue for injunctive relief under § 2305(e). But in *International Union, United Auto., Aerospace and Agr. Implement Workers of America v. Scofield,* 382 U.S. 205, 86 S.Ct. 373, 15 L.Ed.2d 272 (1965), the intervening party also lacked the

right to sue on its own for enforcement. Here, the issue is intervention—*Richman Brothers* does not address the issue; *Scofield* provides authority for intervention by parties who can not enforce on their own. *Bruno v. O'Rourke,* 222 F.Supp. 612 (S.D.N.Y.1963), does not stand for the proposition that a litigant may not intervene in enforcement proceedings. Indeed, intervention is not mentioned at all in that case. In addition to the fact that neither case stands for the proposition that defendant asserts, we think that defendant's opinion that we overlooked authority to the contrary of our holding is misguided when these cases were never mentioned in its brief in opposition to the motion to intervene.

relief. Yellow Freight maintains that in this case the Secretary of Labor is seeking to enforce an interim order issued by an ALJ after a hearing held on the basis of objections raised by Spinner to the Secretary's decision to rely on the results of a union arbitration, rather than a preliminary or final order issued by the Secretary as described by the STAA. Although at this juncture we need not reach that issue to address defendant's arguments, we note that the distinction between interim, preliminary or final orders may be no more than semantics under the STAA.

In support of its position, Yellow Freight points to *Solien v. Miscellaneous Drivers & Helpers Union*, 440 F.2d 124 (8th Cir.), *cert. denied sub nom.*, *Sears Roebuck and Co. v. Solien*, 403 U.S. 905, 91 S.Ct. 2206, 29 L.Ed.2d 680 (1971). *Solien* was a petition for injunctive relief brought by the National Labor Relations Board ("NLRB") pursuant to § 10(*l*) of the National Labor Relations Act, 29 U.S.C. § 160(*l*). Under this statute, if a preliminary investigation by the NLRB shows that an unfair labor practice has occurred, the Board is permitted to petition the district court for preliminary relief. The *Solien* court held that a charging party had no right to intervene in these proceedings, reasoning that there was no risk of multiple appeals since § 10(*l*) did not give an aggrieved person the right to appeal if he is denied injunctive relief. *Id.* at 131. That court opined that the *Scofield* decision turned upon the policy of avoiding multiple appeals. Yellow Freight argues that Spinner, if he receives an adverse final ruling from the Secretary, has the right to appeal that decision.

We do not believe that *Solien* should control the outcome of this decision. First of all, as the *Scofield* court noted, the statutory structure of the Act in question must be examined in order to resolve the question of whether intervention is appropriate. 382 U.S. at 210, 86 S.Ct. at 377. In doing so, we note that the statutory structure of the NLRA is very different from the STAA. Under the STAA, the Secretary of Labor may issue an order for reinstatement without seeking an injunction from the district court as required by the NLRA.

Thus, the Secretary goes to court to enforce its own order of equitable relief, rather than seeking an injunction from the court. Moreover, the STAA is silent regarding the role of the charging party. Statutory silence in the NLRA was precisely what the *Scofield* court took to mean that there was no bar to intervention by the party. In contrast, the role of the charging party in the NLRA injunction proceedings brought in *Solien* is clearly defined and limited by the statute to receiving notice, appearing by counsel and presenting relevant testimony. 29 U.S.C. § 160(*l*); *see Hirsch v. Building & Const. Trade Council*, 530 F.2d 298, 307 (3d Cir. 1976).

Second, we do not agree with the *Solien* court's view that concern about multiple appeals was the single controlling factor in *Scofield*. The *Scofield* court was also concerned about fairness to the proposed intervenor. Significantly, enforcement proceedings brought by the Secretary under § 2305(e) vindicate private interests rather than public interests as under § 10(*l*). The Secretary's order concerns the reinstatement of one individual. Indeed, the purpose of the Secretary's orders under § 2305(c)(2) is to protect "whistleblowers" from suffering devastating financial consequences as a result of a retaliatory discharge. *Brock v. Roadway Express, Inc.*, 481 U.S. 252, 258–59, 107 S.Ct. 1740, 1745–46, 95 L.Ed.2d 239 (1987) (plurality opinion); *accord id.* at 272, 107 S.Ct. at 1753 (White, J., concurring in part and dissenting in part). In contrast, the injunction provisions of the NLRA are designed to protect the public interest. *See Pascarell v. Vibra Screw, Inc.*, 904 F.2d 874, 876 (3d Cir.1990); *Squillacote v. International Union, United Auto., Aerospace and Agr. Implement Workers of Am.*, 383 F.Supp. 491, 492 (E.D.Wis.1974).

It is the policy underlying the STAA that persuades us that intervention is perfectly appropriate in this matter. Should the Secretary lose in this enforcement proceeding and choose not to take an appeal, only Spinner's presence as an intervenor would provide a mechanism to pursue the enforce-

ment of an order intended to protect his job.

Finally, our order permitting intervention specifically limited Spinner's participation to the providing of evidence in support of the Secretary's claim. Thus, his participation in this proceeding will be no greater than if a proceeding were taking place under § 10(*l*). And, of course, as we noted in our first decision, Spinner has no more rights as a result of this intervention than he is entitled to by statute. We are thus puzzled by the defendant's objection.

*Cross–Motions for Summary Judgment*

1. *Overview of Section 405 of the STAA*

Before turning to the motions presented for our consideration by the parties, we will briefly review the "whistle-blowers" provisions of the Surface Transportation Assistance Act in order familiarize the reader. Section 405 of the STAA was considered necessary to encourage "whistle-blowing" by employees. Senate Commerce Committee Section by Section Analysis of Title IV, S. 3044, Commercial Motor Vehicle Safety, 97th Cong., 2d Sess., 128 Cong. Rec. S 14028 (Dec. 7, 1982). The purpose of the statute is to ensure that the government's channels of information are not dried up by employer intimidation of prospective complainants and witnesses. *Brock v. Roadway Express*, 481 U.S. at 258, 107 S.Ct. at 1745 (plurality opinion); *Roadway Express, Inc. v. Dole*, 929 F.2d 1060, 1065 (5th Cir. 1991); *see Brock v. Roadway Express*, 481 U.S. at 273, 107 S.Ct. at 1753 (Stevens, J., dissenting). Through Section 405, Congress created a process which protects the employee from retaliation while determining whether the employee's claim is correct.

In addition to protecting an employee from discharge, discipline or discrimination for filing a complaint about safety or refusing to operate a vehicle in violation of Federal rules or because of apprehension of serious injury due to unsafe condition, 49 App.U.S.C. §§ 2305(a), (b), the statute provides an administrative remedy to employees who believe that they have been discharged in violation of the statute. In-

deed, because protection of an employee in the trucking industry was considered so important by Congress, the elaborately structured scheme is oriented to preserving the status quo if the Secretary deems it necessary. For example, upon the filing of a complaint by an employee, Section 405 authorizes the Secretary of Labor to conduct a preliminary investigation in order to determine whether there is reasonable cause to believe that the complaint has merit. *Id.* § 2305(c)(2)(A). This task is delegated to the regional administrator of OSHA; during the investigation, the person named as the violator is given the opportunity to respond to the complaint. 29 C.F.R. § 1978.103. The Secretary, upon a finding of probable cause, must issue a preliminary order of abatement or reinstatement, if the employee has been discharged. 49 App.U.S.C. § 2305(c)(2)(B).

The person alleged to have committed the violation has thirty days to file objections to the findings or the order and may request a hearing. *Id.* § 2305(c)(2)(A). If objections are filed, the case is litigated within the administrative channels of the Department of Labor. Pre- and post-trial procedures are set forth in the regulations promulgated pursuant to Section 405. *See* 29 C.F.R. 1978.100 *et seq.* If the violator has filed the objections, the Assistant Secretary of Labor is deemed to be the prosecuting party and the complainant is also a party. *Id.* § 1978.107. The order of reinstatement is not stayed while the hearing is pending, *id.*, and becomes effective immediately upon receipt of the notice by the violator. *Id.* § 1978.105(b). After the conclusion of the hearing, the Secretary must issue a final order within 120 days. At any time prior to the issuance of a final order by the Secretary, the parties may settle the dispute. *See id.* § 1978.111(d). In addition, if a settlement offer has been made by the violator that the Secretary deems to be fair and equitable, the Secretary may decline to assume the role of the prosecuting party. *Id.* § 1978.111(d)(3). The burden of prosecuting then falls upon the complainant. *Id.* § 1978.107(b).

An employee who files a complaint under Section 405 may also pursue arbitration remedies provided by a relevant collective bargaining agreement. *Id.* § 1978.112(a). In recognition of the national policy favoring voluntary resolution of disputes under procedures in collective bargaining agreements, when the complainant is pursuing such a remedy, the Secretary or the Assistant Secretary may, in its discretion, postpone a determination of the section 405 complaint and defer to the results of that proceeding. *Id.* § 1978.112(a)(2), (3). Deferral to the outcome of the arbitration is warranted only if it is clear that those proceedings dealt adequately with all factual issues, that the proceedings were fair, regular, and free of procedural infirmities, and that the outcome of the proceedings was not repugnant to the purpose and policy of the Act. *Id.* § 1978.112(c).

Finally, Section 405 provides that the Secretary may file an enforcement action in district court against a person who has failed to comply with an order issued under subsection (c)(2). *Id.* § 2305(e). An appeal to the Court of Appeals from the Secretary's final order, which must be issued 120 days after a decision by the ALJ or after the preliminary order if no objections were filed, is available to any person adversely affected by a final order. *Id.* § 2305(d).

In this case, almost every one of the procedures described above was invoked by one of the three parties involved in this suit and the complicated tangle that emerged has facilitated Yellow Freight's evasion of the shield protecting Spinner. The Secretary's failure to enforce the preliminary order assisted Yellow Freight and further complicated matters. Despite Section 405, Spinner is still out of work and now, much later, the Secretary wants to enforce the order that was issued by the ALJ. Whether that can happen is far less clear than the regulatory maze we have just described.

### 2. *Authority of the District Court to Enforce an ALJ Order*

■ The threshold question to be resolved is whether this court has the authority to enforce ALJ Rippey's order issued July 16, 1991. The parties do not dispute that orders were issued pursuant to Section 405 of the STAA.

The STAA specifically provides for the issuance of a preliminary order by the Secretary of Labor and a final order at the conclusion of all the administrative proceedings. 49 App.U.S.C. § 2305(c)(2)(A). Under subsection (e), the Secretary of Labor may file an action to enforce any order issued under subsection (c)(2). Yellow Freight contends that the order issued by ALJ Rippey on July 16, 1991 is an interim order, not specified in subsection (c)(2) and, hence, unenforceable in a subsection (e) action.

The regulations promulgated pursuant to Section 405 provide that an administrative law judge's decision and order concerning whether the reinstatement of a discharged employee is appropriate is immediately effective upon issuance. 29 C.F.R. § 1978.109(b). Yellow Freight acknowledges that this is so. However, it contends that the regulation providing for the immediate effectiveness of an ALJ reinstatement order permits enforcement of an order not contemplated by Congress in the drafting of Section 405(c)(2). Defendant's Memorandum of Law in Opposition to Spinner's Motion to Intervene, at 15.

■ A regulation may not serve to amend a statute or to add to the statute "something which is not there." *Iglesias v. United States,* 848 F.2d 362, 366 (2d Cir. 1988). In promulgating regulations, an agency is required to give effect to the will of Congress as expressed in the statute. *Manhattan General Equipment Co. v. Commissioner of Internal Revenue,* 297 U.S. 129, 134, 56 S.Ct. 397, 399, 80 L.Ed. 528 (1936). A regulation that is unreasonable or clearly contrary to the language or spirit of the statute is invalid.

The challenged regulation requires that an ALJ order of reinstatement be obeyed immediately. *See* 29 C.F.R. § 1978.109(b). The question to be answered is whether this requirement adds something to the statute that is not there, is unreasonable or contrary to the spirit of the STAA. We hold that the regulation is valid.

Subsection (e) refers to orders issued under subsection (c)(2). *See* 49 App.U.S.C. § 2305(c)(2). An order issued by an ALJ, while not specifically enumerated in subsection (c)(2), is nevertheless contemplated by the statute where it provides for hearings of objections to preliminary orders. *See id.* § 2305(c)(2)(A) ("[E]ither the person alleged to have committed the violation or the complainant may, within thirty days, file objections to the findings or preliminary order, or both, and request a hearing on the record.") Yellow Freight agrees that the Secretary may properly delegate its authority to conduct hearings to administrative law judges. Along with that authority, logically, comes the ability to issue orders. There is nothing in the statute that indicates otherwise. Moreover, we do not feel that it is unreasonable or unanticipated that an ALJ, vested with the authority of the Secretary of Labor, would issue an order of reinstatement after a full hearing on the merits of the dispute in light of the Secretary's ability to issue a reinstatement order after merely a preliminary investigation.

Finally, allowing the ALJ to issue reinstatement orders gives effect to the purpose of the STAA. In enacting Section 405, Congress created an incentive for employees in the transportation industry to detect safety violations by protecting them against retaliation for reporting these violations. *Brock v. Roadway Express*, 481 U.S. at 258, 107 S.Ct. at 1745 plurality opinion) (citing 128 Cong.Rec. 32698 (1982) (remarks of Senator Percy); *id.*, at 32509–510 (remarks of Sen. Danforth)).

The power to issue reinstatement orders vested in the Secretary by Section 405 was specifically intended to give fruition to Congress' intent to protect "whistleblowers." "Congress ... recognized that the employee's protection against having to choose between operating an unsafe vehicle and losing his job would lack practical effectiveness if the employee could not be reinstated pending complete review." *Brock v. Roadway Express*, 481 U.S. at 258–59, 107 S.Ct. at 1746 (plurality opinion). Failing to

enforce reinstatement orders because they happen to be issued by an ALJ rather than the Secretary after a preliminary investigation simply undermines the very goal that Congress sought to accomplish through Section 405. We do not believe that declining to enforce an "interim" order is an action which satisfactorily supports Congressional aims.

### 3. *Appropriateness of enforcement*

Both parties are moving for summary judgment, contending that there are no issues of material fact necessitating trial. *See* Fed.R.Civ.P. 56(c). Indeed, the facts that are relevant to our resolution of this case concern only the events that took place within the Department of Labor after Spinner filed his initial complaint. We will briefly review those events.

After Spinner filed his initial complaint, a preliminary investigation was conducted by the Regional Administrator of OSHA resulting in the Secretary issuing a preliminary order of reinstatement. *See id.* § 1978.104(a). That order was not obeyed. Yellow Freight filed objections to that order, *see id.* § 1978.105(a), although its obligation to obey the reinstatement order was not abated, *id.* § 1978.105(b)(1). Spinner's case was assigned to an ALJ, *id.* § 1978.-106(b). Both Spinner and the Assistant Secretary of Labor for OSHA were the prosecuting parties because only Yellow Freight filed objections to the preliminary order, *see id.* § 1978.107(a), although the Secretary had the option of allowing only Spinner to prosecute the case, *id.; see id.* § 1978.107(b). Upon the request of the Secretary, supported by Yellow Freight, the proceeding concerning the objections to the preliminary order was postponed pending the outcome of arbitration proceedings which resulted from a grievance that Spinner filed with his union the day after he filed his complaint with the Secretary. *Id.* § 1978.112(a)(3). After the arbitration decision was issued, the Assistant Secretary determined that deferral to its outcome was appropriate. *Id.* § 1978.112(c).[7]

---

**7.** In a motion for a preliminary injunction on

April 23, 1992, Yellow Freight attempted to en-

Up to this time, all of the actions of the parties in this suit, excepting, of course, Yellow Freight's failure to obey the reinstatement order issued after the preliminary investigation, were exactly as prescribed by the regulations.

Although the Secretary deferred to the outcome of the arbitration, Spinner continued to prosecute his Section 405 complaint. A hearing was held and, in July 1991, the ALJ ruled in Spinner's favor, also issuing an order of reinstatement. The ALJ issued his final decision concerning damages in January 1992 and the Secretary's final order after review of the record and the ALJ decision is pending.

■ Yellow Freight argues that summary judgment should be granted in its favor because all of the hearings after the Assistant Secretary's decision to defer to the outcome of the arbitration are a nullity. It contends that the Assistant Secretary's deferral was a final disposition of Spinner's complaint under Section 405 of the STAA, the statutory equivalent of the decision now awaited from the Secretary's review of the ALJ decision and order. Yellow Freight maintains that the Secretary is thus bound by this determination.

In response, the Secretary argues that the decision to defer to the outcome of an arbitration is not a final disposition of a complaint filed under Section 405 because regulations provide that the Secretary may proceed with the investigation and issuance of findings and orders regardless of the pendency of other proceedings. *See* 29 C.F.R. § 1978.112(a). What the Secretary suggests is that the deferral to the outcome of an arbitration is a finding that the complaint lacks merit, equivalent to the findings issued after a preliminary investigation. It is this continued prosecution that Yellow Freight contends was improper.

■ The underlying dispute—whether Spinner was discharged in violation of Section 405—is irrelevant to the matter before

us. Instead, to resolve this dispute we must concern ourselves only with the STAA and its supporting regulations and the significance of what has transpired. As the questions to be resolved are purely ones of law, summary judgment is an appropriate device. *Flair Broadcasting Corp. v. Powers*, 733 F.Supp. 179, 184 (S.D.N.Y.1990); *Holland Industries, Inc. v. Adamar of New Jersey, Inc.*, 550 F.Supp. 646, 648 (S.D.N.Y.1982). *See Longo v. United States Postal Service*, 953 F.2d 790, 793 (2d Cir.1992) (where summary judgment motions debate only the significance of undisputed facts, summary judgment is appropriate).

At the outset, we should observe that the Secretary's view has always been that the deferral to the outcome of Spinner's arbitration was not a final determination of the merits of the dispute between Spinner and Yellow Freight and that it was permissible for Spinner to continue the litigation within administrative channels. In the Notice of Determination to Defer to Outcome of Other Proceedings, *see e.g.*, Defendant's Memorandum of Law in Opposition to Plaintiff's Motion for Temporary Restraining Order, Exh. E, the Assistant Secretary indicated that it was declining the role of prosecuting party. Spinner was instructed to assume the role of prosecuting party as set forth in Rule 107(b) and Rule 108. Rule 107(b) states that "where the complainant objects to findings that the complaint lacks merit ... the complainant shall be the prosecuting party." 29 C.F.R. § 1978.107(b). Rule 108 dictates the appropriate caption. *See id.* § 1978.108.

This view of the posture that Spinner's dispute had assumed within the administrative channels of the Labor Department was echoed by ALJ Rippey who issued an order stating that "the case is in the same posture as if on that date the Assistant Secretary had determined that the complaint of Robert Spinner under the Act was without merit." Affidavit of Ronald G. Dunn

join the Secretary of Labor from considering a footnote in a brief submitted by the Assistant Secretary for OSHA which indicates that the determination to defer to the outcome of the

arbitration was rendered hastily and was erroneous. We denied the injunction but do find it interesting, considering this case, that the Secretary is backing off her earlier determination.

(March 30, 1992), Exh. L. Spinner was given thirty days to file objections to the Notice of Deferral. Spinner filed his objections on July 9, 1990 and it was the subsequent litigation arising out of these objections that created the ALJ order the Secretary now seeks to enforce.

In addition, the Secretary's own interpretation of the role of deferral to arbitration places the deferral process within the investigation stage of proceedings within the Department.

> Under this provision [29 C.F.R. § 1978.-112(c) ], the Assistant Secretary, at the investigative phase, may defer to the outcome of proceedings conducted in another forum, including arbitration and grievance proceedings, if those proceedings dealt adequately with all factual issues, were fair, regular and free of procedural defects and the outcome of the proceedings was not repugnant to the purpose and policy of the Act.

53 F.R. 47676–01 (November 25, 1988).

■ It is well accepted that the Secretary's interpretation of her own regulations is entitled to substantial deference. *Udall v. Tallman*, 380 U.S. 1, 16, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1965); *Fluor Constructors v. Occupational Safety and Health Review Commission*, 861 F.2d 936, 939–40 (6th Cir.1988). Agency interpretations are upheld when they are consistent with the purpose of the statute and have a rational basis. *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Bobker*, 808 F.2d 930, 936 (2d Cir.1986). Finally, the agency interpretation must be consistent with the plain language of the regulations. *Capital Cities/ABC, Inc. v. Brady*, 740 F.Supp. 1007, 1014 (S.D.N.Y.1990).

We conclude that the Secretary's interpretation is reasonable in view of the plain language of the regulations for the following reasons. The litigation commenced when Yellow Freight filed its objections to the Secretary's preliminary order. At that time, Spinner and the Secretary stood on equal footing as parties. 29 C.F.R. § 1978.107(a); *id.* § 1978.108(a); *see* Aff. of Ronald Dunn, Exh. C (letter serving as the filing of objections contained caption indicating Secretary as prosecuting party and Spinner as complainant, pursuant to 29 C.F.R. § 108(a)). The fact that the Assistant Secretary chose to defer to the outcome of the arbitration in the ensuing litigation merely affects the Secretary's role as the prosecuting party because under 29 C.F.R. § 1978.107(a) Spinner was still a party to the action. Like co-plaintiffs in ordinary civil litigation, the decision by one plaintiff to withdraw from prosecuting a case do not bind the right of the other plaintiff to continue in court. The Assistant Secretary's deferral is nothing more than its election not to continue to prosecute Spinner's complaint. This interpretation is easily gleaned from the plain words of the regulations, supported by the Secretary's interpretation. *Bonessa v. U.S. Steel Corp.*, 884 F.2d 726, 731–32 (3d Cir.1989).

It is our view that allowing the litigation to continue was permissible. Yellow Freight's argument that the Secretary's deferral is a final determination of the case's merits would necessarily completely subsume the complainant's action in that pursued by the Secretary because the complainant would have no ability to prosecute his or her case without the assistance of the Secretary. This interpretation has no support in the regulations. For example, the employee is permitted to litigate the case in place of the Secretary. *See* 29 C.F.R. § 1978.107(a). Also, the complainant may file objections to a preliminary decision and order and prosecute the case on his or her own. *Id.* § 1978.107(b); *id.* § 108(b) (describing caption in case arising from objections filed by complainant as Complainant v. Respondent).[8]

---

**8.** Under Rule 111(d)(3), 29 C.F.R. 1978.-111(d)(3), if the defendant "makes an offer to settle the case which the Assistant Secretary, when acting as the prosecuting party, deems to be a fair and equitable settlement ... and the complainant refuses to accept the offer, the Assistant Secretary may decline to assume the role

of prosecuting party as set forth in [Rule 107(a) ]." The rule goes on to state that after the Assistant Secretary withdraws from the case, the parties shall assume the roles set forth in § 1978.107(b).

Rule 111(d)(3) gives support to the idea that it is permissible for the complainant to continue

We have given careful consideration to *National Labor Relations Board v. Motor Convoy, Inc.*, 673 F.2d 734 (4th Cir.1982). In that case, the court ordered the NLRB to defer to the outcome of an arbitration proceeding initiated by a discharged worker under his collective bargaining agreement. The court reasoned that the NLRB had a stated policy of consistently deferring to arbitration awards and could not depart from this procedure without offering a reason. On first glance, *Motor Convoy* appears to support Yellow's Freight position that the Secretary is obligated to defer to the arbitration. However, further analysis reveals that *Motor Convoy* is not applicable to the case before us.

Under the statutory and regulatory scheme of the National Labor Relations Act which governed *Motor Convoy*, a complainant such as Skinner would not have the right to prosecute his or her own case in administrative proceedings. *See N.L.R.B. v. United Food and Commercial Workers Union, Local 23, AFL–CIO*, 484 U.S. 112, 118–19, 108 S.Ct. 413, 418–19, 98 L.Ed.2d 429 (1987). Thus, under the NLRA, the Board's decision to defer to the outcome of an arbitration would conclude all proceedings before it because no prosecuting party would remain. In contrast, under the STAA, the complainant can prosecute its complaint regardless of whether the Secretary chooses to do so. The decision by the Secretary to defer to the outcome of arbitration is unilateral, as discussed earlier, and cannot bind the com-

plainant especially in light of the fact that regulations permit the complainant to pursue arbitration remedies in addition to Section 405 proceedings, 29 C.F.R. § 1978.-112(a), instead of in place of.

■ More significantly, in *Motor Convoy*, the court invoked a test known as the "Spielberg Doctrine" [9] to determine whether the NLRB should be compelled to defer to arbitration. One of the elements to be satisfied before deferral to arbitration could be compelled was whether the parties agreed to be bound by the results of the arbitration.[10] Under the STAA, whether the complainant and the employer have agreed to be bound by the arbitration is irrelevant to the decision of the Secretary to defer to the arbitration's outcome. *Compare Motor Convoy*, 673 F.2d at 735 *with* 29 C.F.R. § 1978.112(c).[11] This distinction suggests that the Secretary of Labor, in making a decision to defer to arbitration proceedings, is considering only the impact on her own actions. Otherwise, under well-settled precedent [12], if the Secretary were to take action that would preclude further consideration of Spinner's complaint, she would necessarily have to consider whether the arbitration was binding. *See, e.g., N.L.R.B. v. Plasterers' Local Union No. 79*, 404 U.S. 116, 136–37, 92 S.Ct. 360, 372, 30 L.Ed.2d 312 (1971); *N.L.R.B. v. Designcraft Jewel Industries, Inc.*, 675 F.2d 493, 496 (2d Cir.1982) (per curiam); *N.L.R.B. v. South Central Bell Telephone Co.*, 688 F.2d 345, 350 (5th Cir.

litigating after the Secretary has deferred to the arbitration outcome. Although this rule refers to settlements, it is clear that the Secretary cannot control the ultimate disposition of the matter by her actions. The Secretary may approve a settlement but she cannot compel the complainant to accept its terms nor can she stop him or her from continuing the litigation. The same logic carries over to the Secretary's decision to defer to the outcome of another proceeding.

**9.** *Spielberg Manufacturing Co.*, 112 N.L.R.B. 1080, 1082 (1955).

**10.** The other factors are: 1) whether the proceedings have been fair and regular; 2) whether the decision by the arbitrator was not clearly repugnant to the purposes and policies of the Act; and 3) whether the unfair labor practice

charges were resolved. *Motor Convoy*, 673 F.2d at 734.

**11.** The regulation requires that before a deferral takes place, the Secretary must be sure that "those proceedings dealt adequately with all factual issues, that the proceedings were fair, regular, and free of procedural infirmities, and that the outcome of the proceedings was not repugnant to the purpose and policy of the Act." 29 C.F.R. § 1978.112(c).

**12.** Although these precedents arise under the NLRA, we observe that the Secretary specifically had the "Spielberg Doctrine" in mind when promulgating the provision for deferring to arbitration. *See* 53 F.R. 47676–01. The omission of the requirement that the arbitration be binding is therefore even more striking.

1982), *cert. denied*, 460 U.S. 1081, 103 S.Ct. 1768, 76 L.Ed.2d 342 (1983). Finally, *Motor Convoy* stands only for the proposition that the NLRB must defer to arbitration unless it has offered reasons why it should not do so. Although it contains dicta extolling the benefits of arbitration, we cannot derive from that any precedent for deeming the Secretary's deferral to arbitration under the STAA the final conclusion of the complaint brought by Spinner.[13]

Yellow Freight also argues that the regulations contain language that suggests that a deferral to the outcome of an arbitration is a final determination of the merits of the case. The regulation states that if the complainant has initiated proceedings in another forum and "if such other actions initiated by a complainant are dismissed without adjudicatory hearing thereof, such dismissal will not ordinarily be regarded as determinative of the section 405 complaint." 29 C.F.R. § 1978.112(c). Yellow Freight contends that this regulation must necessarily imply the converse, namely, that if a complainant's claim was dismissed in another forum after an adjudicatory hearing, that dismissal is determinative of the section 405 complaint. Even assuming that Yellow Freight is correct, this argument begs the question of whether it was permissible for Spinner to continue litigating his claim on his own. We have already stated that the deferral to arbitration merely governs the Secretary's own action and does not create a final resolution of the complaint filed by Spinner. We do not see that this is contradicted by the language of Rule 112(c).

### 4. *Should the order be enforced?*

[9] A review of the final order of the Secretary is properly performed only by the Court of Appeals and the final decision of the Secretary may be affirmed only upon the finding that substantial evidence in the record supported her findings. *See Roadway Express v. Dole*, 929 F.2d 1060, 1065; *Lewis Grocer Co. v. Holloway*, 874 F.2d 1008, 1011 (5th Cir.1989). *See* 49 App. U.S.C. § 2305(d). Not so stringent a review occurs in an enforcement proceeding because this court may not undertake the review of the record that Congress assigned to the circuit courts.

We do not believe, however, that an order issued under the STAA should be enforced just because it exists.[14] Although the regulations promulgated pursuant to the STAA demand that the employer comply immediately with any order of reinstatement, *see* 29 C.F.R. §§ 1978.105(b), 109(b), some review by this court is necessary to protect the rights of the employer. After much consideration, we conclude that the task of this court is not to review the evidence but to simply ascertain whether the procedures followed by the Secretary in issuing the ALJ order satisfied due process. We reject the invitation of Yellow Freight to scrutinize whether the evidence before the ALJ was sufficient to determine that a violation of the STAA had occurred. That is not this court's role and we will not intrude into the jurisdiction of the Court of Appeals.[15]

■ Yellow Freight has not argued that it was deprived of due process.[16] In-

---

**13.** We note that had the Secretary not deferred to the outcome of the arbitration, the arbitration award, though affirmed by the state appellate court, would not have a preclusive effect on the findings of the ALJ. *See N.L.R.B. v. Yellow Freight Systems, Inc.*, 930 F.2d 316, 320 (3d Cir.), *cert. denied*, —— U.S. ——, 112 S.Ct. 78, 116 L.Ed.2d 51 (1991).

**14.** We note that this is the first time, as far as we can determine, that the Secretary has come to the district court pursuant to Section 405 to enforce an order of reinstatement. Yellow Freight has, in essence, argued that this court lacks subject matter jurisdiction to enforce a reinstatement order issued by an ALJ pursuant

to proceedings under the STAA. We rejected that argument earlier when we determined that we had the authority to enforce such an order.

**15.** We believe that the question of issue preclusion which arises from the previous arbitration proceeding is similarly best addressed to the circuit court.

**16.** In *Brock v. Roadway Express*, 481 U.S. 252, 107 S.Ct. 1740, the majority of the justices agreed that a preliminary reinstatement order was unconstitutionally imposed because the defendant was not informed of relevant evidence supporting the complaint and could not therefore prepare a meaningful response. *Id.* at 268,

deed, though the carrier may quarrel with basis of the ALJ's decision, these are arguments better addressed to the appellate court. Instead, the record presented here makes it abundantly clear that Yellow Freight litigated this case to the fullest in front of the Administrative Law Judge before the reinstatement order was issued. Yellow Freight was given "an opportunity to present contrary testimony and evidence and to cross-examine witnesses" before imposition of an indefinite preliminary reinstatement order. *Brock v. Roadway Express*, 481 U.S. at 269, 107 S.Ct. at 1751 (Brennan, J., concurring in part and dissenting in part). Moreover, this case has not arisen out of a summary proceeding as in *Brock v. Roadway Express*—due process has been more than satisfied here. Therefore, our inquiry need not continue. For our purposes, the order of reinstatement was properly issued and we conclude that it should be enforced.

## CONCLUSION

Defendant's motion for summary judgment is denied.[17] Plaintiff's motion for summary judgment and plaintiff-intervenor's motion for summary judgment are granted. Plaintiff will submit an order to effect reinstatement of Robert Spinner as an employee of Yellow Freight, Inc. pending the issuance of the Secretary's final order and should that order be in favor of Robert Spinner, pending the outcome of any appeal by the aggrieved party to the Court of Appeals. Plaintiff's motion for a temporary restraining order and for a preliminary injunction are denied as moot.

SO ORDERED.

---

107 S.Ct. at 1750; *id.* at 269, 107 S.Ct. at 1751 (Brennan, J., concurring in part and dissenting in part); *id.* at 271, 107 S.Ct. at 1752 (White, J., concurring in part and dissenting in part). The plurality concluded that "minimum due process for the employer [under the STAA] requires notice of the employee's allegations, notice of the substance of the relevant supporting evidence, an opportunity to submit a written response, and an opportunity to meet with the

investigator and present statements from rebuttal witnesses." *Id.* at 264, 107 S.Ct. at 1748.

17. Defendant has raised a number of other arguments in support of its motion for and in opposition to the plaintiff's and plaintiff-intervenor's motion for summary judgment. We find these to be meritless.